# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### HUNTINGTON DIVISION

**XIU JIN LIN;**
**WEN HUI LIN;**
**XU LIN; and,**
**HAO LIN,**

      **Plaintiffs,**

**v.**                                                          **Case No. 3:19-cv-00283**

**KEVIN MCALEENAN,**
***Acting Secretary of the***
***Department of Homeland Security*; and**
**WILLIAM BARR**
***United States Attorney General,***

      **Defendants.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

In April 2019, Plaintiffs Xiu Jin Lin, Wen Hui Lin, Xu Lin, and Hao Lin, ("hereinafter Plaintiffs"), proceeding *pro se,* filed a civil complaint against Defendants. (ECF No. 1). Currently pending before the court is Defendants' Motion to Stay Civil Action, or in the Alternative, to Extend Responsive Pleading Deadline. (ECF No. 7). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by standing order is referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' Motion to Stay be **GRANTED**; and that the complaint, (ECF No. 1), be **STAYED**, until **December 27, 2019.**

## I.    <u>Relevant Facts and Procedural History</u>

On June 4, 2012, Plaintiff Xiu Jin Lin was granted asylum status in the United States by an Immigration Judge. (ECF No. 7-1 at 4). In May 2013, Xiu Jin Lin filed petitions for asylum on behalf of his spouse, Wen Hui Lin, and his two children, Xu Lin and Hao Lin. (*Id.*). Based on Xiu Jin Lin's asylum status, these petitions were likewise approved, and the applicants were granted asylum in the United States. (*Id.*). On June 17, 2013, Xiu Jin Lin filed an I-485 Application to Register Permanent Residence or Adjust Status, seeking a green card (i.e. lawful permanent resident status). His family members followed suit, submitting their I-485 applications on June 15, 2015. (*Id.*)

During this time period, multiple law enforcement agencies were cooperating in Operation Fiction Writer ("OFW"), a criminal investigation into immigration fraud. (*Id.* at 2). OFW uncovered a large-scale asylum fraud conspiracy, which led to the indictment of thirty individuals employed at multiple law firms. These individuals were charged with various crimes, including filing false asylum applications, preparing false immigration documents, and committing other types of immigration benefit fraud. (*Id.*). Between 2013 and 2014, all thirty individuals were convicted. (*Id*). On September 24, 2014 and February 5, 2015, the United States Citizenship and Immigration Services ("USCIS") issued memoranda initiating an agency-wide "hold" on all applications and petitions associated with the OFW investigation until an appropriate framework for reviewing the affected applications could be established. (*Id.* at 2).

In the course of the investigation, agents identified Xiu Jin Lin's case as being one of 2,800 cases connected to the OFW fraud scheme. (*Id.* at 4). Apparently, Xiu Jin Lin had retained the Feng Ling Liu Law Firm to represent him in his quest for asylum in the United States, and the employees of that law firm were among the thirty individuals

ultimately convicted of immigration fraud. Feng Ling Liu, the founder of the law firm, was herself convicted in 2014 and sentenced to five years in prison for her role in the conspiracy. The evidence from Liu's criminal case revealed that between the years of 2007 and 2012, Liu and her associates coached immigration applicants to lie to immigration officers and assisted applicants in creating fabricated petitions by filing thousands of fraudulent asylum applications. (ECF No. 7-1 at 4 n.1).[1] As a result of Plaintiffs' association with the Feng Ling Lui Law Firm, their I-485 applications were tagged for intensive review and have remained unresolved. (*Id.* at 4).

Plaintiffs filed their complaint on April 16, 2019, seeking an order from this Court compelling Defendants to adjudicate Plaintiffs' immigration applications. (ECF No. 1 at 4). Plaintiffs argue that their applications have been pending for an unreasonable amount of time given that I-485 requests typically take 6.5 to 27.5 months to adjudicate. In contrast, their applications have been pending in excess of four years. (ECF No. 10).

On June 28, 2019, Defendants filed a Motion requesting a stay of the civil action and an accompanying memorandum in support. (ECF Nos. 7, 8). Defendants also submitted the affidavit of Gregory A. Richardson. (ECF No. 7-1). Mr. Richardson states that he is the Director of the USCIS's Texas Service Center ("TSC"), which is located in Dallas, Texas. (*Id.*). Mr. Richardson asserts that on October 31, 2016, the USCIS issued a memorandum releasing the hold on applications identified as being associated with the

---

[1] In an affidavit supplied by the defendants, Gregory A. Richardson, an employee of USCIS, a division of the United States Department of Homeland Security ("DHS"), states specifically that Plaintiff Xiu Jin Lin was represented by "either Attorney Feng Li or Attorney Mengfei [sic] Yu. Both were employees of the Feng Ling Lui Law firm." (ECF No. 7-1 at 4). Feng Ling Liu was convicted and sentenced for her part in an immigration fraud conspiracy. *See United States v. Feng Ling Liu,* No. 12-CR-934-01 RA, 2015 WL 4460898, at *1(S.D.N.Y. July 20, 2015). She was "one of the conspiracy's architects," and employed Meng Fei Yu as an attorney at the Feng Ling Liu Law firm. *Id.* The name of the law firm was later changed, and a second firm was opened in an attempt to avoid "unwanted scrutiny" from federal officers. *Id.* at *3.

OFW investigation and permitting them to be individually reviewed and adjudicated. (*Id.* at 2). The TSC's Fraud Detection and National Security ("FDNS") unit, which has 28 employees assigned to work on fraud investigations, was instructed to individually review and investigate each of the approximately 2,800 affected applications and prepare a written Statement of Facts ("SOF") report, detailing the results of each investigation. (*Id.* at 2-3). According to Mr. Richardson, after the SOF is issued, it is reviewed by an adjudication officer, who determines the appropriate action to take. The fraud investigation process is time-consuming and resource-intensive, and the TSC is currently experiencing a backlog of OFW-related cases. (*Id.* at 3). He stated that for cases where there is "strong indicia of fraud," the application is sent to the National Records Center for review by the Office of the Principal Legal Advisor ("OPLA"), which is a division of the United States Immigration and Customs Enforcement ("ICE"). (*Id.*). ICE OPLA then reviews the case to determine if a Motion to Reopen ("MTR") is warranted. The filing of a MTR results in the initiation of removal proceedings before the Immigration Judge who granted the underlying asylum claim. (*Id.*). If ICE OPLA determines a MTR is warranted, the TSC puts a hold on all related petitions and applications until the conclusion of the removal process. If ICE OPLA declines to initiate removal proceedings based on the referral, then the related applications and petitions are returned to the TSC for adjudication. (ECF No. 7-1 at 3).

Mr. Richardson states that Plaintiff Xiu Jin Lin's case has proceeded through an initial review stage performed by the FDNS, and is currently pending review by ICE OPLA for consideration of whether to file a MTR. (*Id.* at 4). Accordingly, Plaintiffs' pending I-485 applications are on hold until ICE OPLA makes a recommendation regarding the initiation of removal proceedings. (*Id.*). If a MTR is approved by the Immigration Judge,

jurisdiction over Plaintiffs' immigration status will be removed from USCIS and vested in the Immigration Court. If Plaintiffs' underlying asylum status is revoked, they will be unable to proceed with the adjustment of status applications. (*Id.*).

In the memorandum in support of their motion for a stay, Defendants request that this Court "[i]n the interest of judicial economy and efficiency," stay the instant action until a decision is reached by ICE OPLA as to whether to file a MTR and initiate removal proceedings. (ECF No. 8 at 7-8). Defendants request a stay until December 27, 2019. If a determination has not been reached by that date, Defendants state they will file a status report and continue to do so every 90 days until a determination is reached by ICE OPLA. (*Id.* at 8). If this Court declines to grant the requested stay, Defendants ask to be given an additional 30 days to file a responsive pleading. (*Id.*).

On July 26, 2019, Plaintiffs submitted a Response to Defendants' request in which they object to a stay of this case. (ECF No. 10). Plaintiffs argue that the length of time it has taken the USCIS to adjudicate their I-485 applications has resulted in "unreasonable delay." (*Id.* at 1). Plaintiffs state that while they object to the stay motion, they do not object to Defendants being granted 30 additional days to file a responsive pleading. (*Id.* at 2). Plaintiffs attach a printed page taken from the USCIS website corroborating that the estimated processing time for an I-485 application filed in 2017 is 6.5 to 27.5 months. (*Id.* at 3-4).

## II.  Discussion

### A. Jurisdiction

Subject matter jurisdiction is a threshold question that addresses the power of the court to hear a case and must be resolved before a court considers the merits of a case. *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 479–80 (4th

Cir.2005). "Subject-matter jurisdiction ... is an [Article] III as well as a statutory requirement; it functions as a restriction on federal power, and contributes to the characterization of the federal sovereign." *Id.* (quoting *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)). Consequently, courts have an independent obligation to assess whether subject matter jurisdiction exists, irrespective of whether it is raised by the parties. *See Wye Oak Tech., Inc. v. Republic of Iraq*, 666 F.3d 205, 218 (4th Cir.2011). The burden of proving subject matter jurisdiction rests with the plaintiff, the party asserting that jurisdiction exists. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982). Although neither party has raised the issue, the undersigned will consider the issue of subject matter jurisdiction as there is some question regarding its existence.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Plaintiffs request that this Court order the USCIS, a federal agency and component of the DHS, to adjudicate their I-485 applications, but have not specifically identified any constitutional or statutory basis for this Court's jurisdiction. There are two potential statutory candidates which may confer jurisdiction for this type of claim. One is the Mandamus Act, which grants federal courts authority over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." *See* 28 U.S.C. § 1361. The other is the Administrative Procedures Act ("APA") which requires "each agency [to] proceed to conclude a matter presented to it ... within a reasonable time." 5 U.S.C. § 555(b). The APA further permits judicial review and authorizes district courts to "compel agency action unlawfully

withheld or unreasonably delayed." *See* 5 U.S.C. § 706(1). As the APA specifically speaks to agency action that is "unreasonably delayed," and Plaintiffs complain that their applications have been subjected to "unreasonable delay," (ECF No. 10 at 1), the undersigned will consider if the APA grants subject matter jurisdiction over Plaintiff's claims.

### 1. Relevant Law

Under § 245 of the Immigration and Nationality Act ("INA"), the Attorney General has the discretion to adjust the status of certain aliens to allow permanent residence in the United States. The Attorney General may adjust an alien to permanent resident status if:

> (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). In this case, Plaintiffs filed applications requesting the adjustment of their status to permanent residents relying on their eligibility under 8 U.S.C. § 1159(a). That portion of the INA authorizes the Secretary of the DHS, or the Attorney General, acting within their "discretion," to adjust the status of any alien granted asylum to that of a permanent resident if the alien:

> (1) applies for such adjustment,
>
> (2) has been physically present in the United States for at least one year after being granted asylum,
>
> (3) continues to be a refugee within the meaning of section 1101(a)(42)(A) of this title or a spouse or child of such a refugee,
>
> (4) is not firmly resettled in any foreign country, and
>
> (5) is admissible (except as otherwise provided under subsection (c)) as an immigrant under this chapter at the time of examination for adjustment of

such alien.

8 U.S.C. § 1159(b). Neither the statute, nor the regulations on asylee status adjustment, provide a specific time frame within which the Attorney General or Secretary of the DHS must adjudicate an application. *See Id.*; 8 C.F.R. § 209.2.

### 2. The APA

The APA instructs federal courts to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). Although the APA embodies a "basic presumption of judicial review" over final agency action, *Lincoln v. Vigil*, 508 U.S. 182, 190, (1993) (internal quotation marks omitted), the APA itself "is not a jurisdiction-conferring statute." *Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 619 (4th Cir. 2010) (quoting *Trudeau v. FTC*, 456 F.3d 178, 183 (D.C.Cir. 2006)). Instead, jurisdiction for a claim raised under the APA rests on "the 'federal question' statute, which grants the district court 'original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.'" *Id.* (quoting 28 U.S.C. § 1331). This statute operates to "confer jurisdiction on federal courts to review agency action," and to reach a determination regarding whether the action complies with the requirements of the APA. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977).

While the APA provides a presumption of judicial oversight over agency actions, "its judicial review provisions do not apply where 'statutes preclude judicial review,'" *Lee*, 592 at 619 (quoting 5 U.S.C. § 701(a)(1)), or where the "agency action [is] 'committed to agency discretion by law.'" *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 697 (4th Cir. 2019) (quoting 5 U.S.C. § 701(a)(2)). This is because, "a specific limitation on federal court jurisdiction ... overrides the general grant of federal jurisdiction in § 1331." *Wade v. Blue*, 369 F.3d 407, 411 n.2 (4th Cir. 2004). As the INA

provides a specific limitation on federal jurisdiction, it is necessary to consider whether this limitation applies to Plaintiffs' claim.

### 3. Jurisdiction under the INA

The INA expressly precludes judicial review over certain discretionary agency decisions saying:

> Notwithstanding any other provision of law (statutory or nonstatutory), ... and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review—
>
> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or
>
> (ii) *any other decision or action* of the Attorney General or the Secretary of Homeland Security the authority *for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security*, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B) (emphases added). Because § 1255(a), which governs applications for adjustment of status generally, and § 1159(b), which applies to status adjustment for asylees specifically, both expressly state that the ultimate decision of whether or not to grant the requested status adjustment is discretionary, courts have consistently held that applicants may not seek judicial review regarding a final decision to deny an application for adjustment of status. *See Lee*, 592 at 619 ("The INA specifically closes the door to judicial review of certain discretionary agency decisions, including the denial of an application for adjustment of status."); *see also Fayyazi v. Napolitano*, No. CIV. WDQ-11-3066, 2012 WL 5267090, at *3 (D. Md. Oct. 22, 2012) (finding the Secretary's decision to grant or deny an adjustment of status application is unreviewable); *Zhang v. Chertoff*, 491 F. Supp. 2d 590, 592 (W.D. Va. 2007) ("The adjustment of an alien's status is, by law, such an immigration issue left to the discretion of the Attorney

General."); *Geneme v. Holder*, 935 F. Supp. 2d 184, 190 (D.D.C. 2013) ("On the one hand, the ultimate decision whether to adjust the status of an alien who has been granted asylum is certainly made discretionary by the relevant subchapter.").

While federal courts are in agreement that there is no jurisdiction to review the merits of a decision denying an application for the adjustment of status, they are sharply divided over whether this prohibition extends to cases—like the one presented here—which instead challenge the *pace* at which such an application is processed. Some district courts have concluded that the INA's express preclusion of jurisdiction over discretionary agency decisions in this field is broad enough to cover the entire adjustment application process, including claims alleging that the decision has been unreasonably delayed.[2] Other district courts have reached the opposite conclusion, however, finding that federal courts do have jurisdiction to consider complaints regarding the USCIS's pace of adjudication.[3] Courts in this circuit have reached differing conclusions regarding this

---

[2] *See e.g. Beshir v. Holder*, 10 F. Supp. 3d 165, 174 (D.D.C. 2014) ("Because the INA's jurisdiction-stripping provision applies to the pace of adjudication, then, it provides a barrier to any basis for judicial review over [the plaintiff's] claim."); *Singh v. Holder*, No. CIV.A. 14-387 ES JAD, 2015 WL 1399055, at *10 (D.N.J. Mar. 25, 2015) (finding no jurisdiction over claims challenging the pace of adjudication of status adjustment applications); *Namarra v. Mayorkas*, 924 F. Supp. 2d 1058, 1064 (D. Minn. 2013) (same, collecting cases); *Singh v. Napolitano*, 909 F. Supp. 2d 1164, 1169 (E.D. Cal. 2012) (same).

[3] *See e.g. Koren v. Chertoff,* No. 3:07CV157 PCD, 2007 WL 1431948, at *4 (D. Conn. May 14, 2007) ("Defendants are correct that the decision of whether to grant or deny an adjustment application is wholly discretionary, however, the decision of whether to actually adjudicate an adjustment application, as Plaintiffs are requesting in this case, is not discretionary.); *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ([T]he [USCIS] simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA."); *Ahmed v. Holder*, 12 F. Supp. 3d 747, 756 (E.D. Pa. 2014) ("Therefore jurisdiction over a claim that adjudication has been unreasonably delayed is not barred by the INA's jurisdiction-stripping provision, and this Court retains jurisdiction over [the plaintiff's] claim that USCIS has unreasonably delayed the adjudication of his application."); *Boussana v. Johnson*, No. 14 CIV. 3757 LGS, 2015 WL 3651329, at *5 (S.D.N.Y. June 11, 2015) (subject matter jurisdiction exists over claim alleging unreasonable delay in asylum application process); *Hassane v. Holder*, No. C10-314Z, 2010 WL 2425993, at *3 (W.D. Wash. June 11, 2010) (same); *Dehrizi v. Johnson*, No. CV-15-00008-PHX-ESW, 2016 WL 270212, at *5 (D. Ariz. Jan. 21, 2016) (same).

question, with the division at times extending to judges sitting within the same district. *Compare Safadi v. Howard,* 466 F. Supp. 2d 696, 700 (E.D. Va. 2006) ("[Section] 1252(a)(2)(B)(ii) precludes judicial review of any 'action,' meaning any act or series of acts, included within the ongoing adjudication process and the pace at which that action proceeds."); *Zhang*, 491 F. Supp. at 593 ("A holding that USCIS does not have discretion over the pace of application processing would lead to the illogical conclusion that USCIS must reach an unreviewable decision within a reviewable period of time."); *with Alkassab v. Rodriguez*, No. 2:16-CV-1267-RMG, 2017 WL 1232428, at *5 (D.S.C. Apr. 3, 2017) ("USCIS's compliance with the APA is not immune from judicial review. Courts have found that the Government's failure to take any action on an immigration application could run afoul of the requirement that an agency conclude the matters presented to it within a reasonable time."); *Aslam v. Mukasey*, 531 F. Supp. 2d 736, 740 (E.D. Va. 2008) ("Accordingly, the Court retains jurisdiction under the APA to determine whether the Secretary has unlawfully delayed or withheld final adjudication of a status adjustment application.").

The only circuit court to have directly addressed the issue, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit"), determined that it lacked jurisdiction over a claim alleging unreasonable delay in the adjudication of an adjustment of status application. *See Bian v. Clinton*, 605 F.3d 249, 255 (5th Cir. 2010), *vacated as moot*, No. 09-10568, 2010 WL 3633770 (5th Cir. Sept. 16, 2010). In reaching this decision, the Fifth Circuit concluded that the INA's jurisdiction-stripping provision expressly precludes review of all discretionary acts regarding adjustment of status applications, including "interim decisions" such as those which dictate the pace of adjudication. *Id.* In *Debba v. Heinauer*, 366 F. App'x 696, 698 (8th Cir. 2010), the United States Court of Appeals for

the Eighth Circuit ("Eighth Circuit") considered a similar claim, noting that the district court "apparently concluded that it had subject matter jurisdiction under 28 U.S.C. § 1331 to consider [the plaintiff's] claim based on the APA." The Eighth Circuit went on to note that "some courts have reasoned that a district court has authority to order the officials to decide an adjustment application if the delay has been unreasonable," but ultimately declined to directly decide the issue, and instead dismissed the case based on the merits. *Id.* at 699.

The United State Court of Appeals for the Fourth Circuit ("Fourth Circuit") has not addressed the issue presented here. However, several of its opinions discussing the jurisdictional reach of the APA are relevant. The Fourth Circuit has previously stated that:

> [E]ven where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations, but they may not review agency action where the challenge is only to the decision itself.

*Elecs. of N. Carolina, Inc. v. Se. Power Admin.*, 774 F.2d 1262, 1267 (4th Cir. 1985) (internal quotations omitted). In *Angelex Ltd. v. United States*, 723 F.3d 500 (4th Cir. 2013), the Fourth Circuit clarified that this principle should not be extended to permit plaintiffs to challenge the basis of a decision that is committed to agency discretion by law via artful framing of their complaint. In that case, the Fourth Circuit reversed the district court's alteration of a bond imposed by the Coast Guard on a ship operator who had violated regulations regarding maritime pollution. *Id.* at 502, 509. The Fourth Circuit determined that review was not appropriate under the APA as the relevant statute granted "the Coast Guard broad discretion to deny bond altogether, and [to] ... dictate the terms of any bond that it may accept." *Id.* at 507. The Fourth Circuit reached this determination despite the plaintiffs' arguments that they were not challenging the discretionary decision

itself, but the Coast Guard's actions taken in excess of its statutory authority, because this characterization of the claim failed to convert what was in essence a challenge to an unreviewable discretionary decision into a valid claim. *Id.* at 507-508.

The Supreme Court of the United States ("Supreme Court") has had the opportunity to consider the reach of the INA's jurisdiction-stripping provision in *Kucana v. Holder*, 558 U.S. 233 (2010). There, the Supreme Court concluded that § 1252(a)(2)(B)(ii), the same jurisdiction-stripping provision at issue here, did not prohibit federal jurisdiction over orders by the Board of Immigration Appeals denying motions to reopen removal proceedings. *Id.* at 245-46. In reaching this decision, the Supreme Court determined that the jurisdictional bar imposed by § 1252(a)(2)(B)(ii) is not implicated unless the statutory provision in question specifically states that the challenged decision is discretionary. *Id.* at 246-47. The Supreme Court further held that the types of decisions insulated from judicial review by the INA are "substantive decisions ... involv[ing] whether aliens can stay in the country or not," whereas determinations which "do[ ] not direct the Executive to afford the alien substantive relief" are not barred from review. *Id.* at 247-48. Finally, the *Kucana* Court found its determination that jurisdiction existed despite the jurisdiction-stripping provision of the INA to be supported by the principle that "[w]hen a statute is 'reasonably susceptible to divergent interpretation, we adopt the reading that accords with traditional understandings and basic principles: that executive determinations generally are subject to judicial review.'" *Id.* at 251 (quoting *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 434, (1995)).

With this precedent in mind, the undersigned will now consider whether it is appropriate to exercise jurisdiction over Plaintiffs' claim. Section 1252(a)(2)(B)(ii) of the INA mandates that any "decision or action of the Attorney General or the Secretary of

Homeland Security" that is "specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security," is not subject to judicial review. Plaintiffs' claim will not be amenable to judicial review then, if the pace at which the USCIS considers their applications is both a "decision or action," and one that is specified to be within the discretion of the relevant agency heads.

*i.) Decision or action*

The USCIS has clearly performed an action or decision that has resulted in the delay of adjudication of Plaintiffs' applications for adjustment of status. Specifically, a series of discrete actions and decisions have caused the six-year delay since Plaintiff Xiu Lin first filed his application in June 2013. These actions include the nearly two-year agency-wide "hold" on all applications and petitions associated with the OFW investigation instituted by the USCIS, as well as the decision to refer Plaintiffs' case to ICE OPLA to consider initiation of removal proceedings. (ECF No. 7-1 at 2, 4). Courts that have considered this issue have generally agreed that the pace at which an application is adjudicated constitutes a "decision or action" taken by the USCIS, especially in cases where, as here, the delay can be attributed to a specific agency decision to place an application on hold or to forestall consideration in some manner. *See e.g. Geneme*, 935 F. Supp. at 190 ("[The plaintiff's] application ... has been formally placed on hold. There is no question that USCIS has made a decision with regard to that application."); *Safadi*, 466 F. Supp. at 700 (finding that "action" means "any act or series of acts" comprising the adjudication process, including the pace at which the adjudication proceeds); *Beshir*, 10 F. Supp. 3d at 174 ("The remaining question then is whether the pace of adjudication is an applicable 'decision or action.' Plainly it is."); *Fayyazi*, No. CIV. WDQ-11-3066, 2012 WL 5267090, at *3 (the pace at which an application is processed is a discretionary

"action").

*ii.) Specified to be discretionary*

As the challenged delay in consideration of Plaintiffs' applications is due to a "decision or action" taken by the USCIS, the next question is whether this decision or action is "specified" to be discretionary. 8 U.S.C. § 1252(a)(2)(B)(ii). Section 1159(b) governs status adjustments for asylees and falls under the cited subchapter. 8 U.S.C. § 1159. Moreover, it contains language specifying that the ultimate decision of whether or not to adjust the applicant's status is discretionary. *Id.* Courts that have found no jurisdiction over claims, such as these, have generally concluded that the discretion specified in the statute includes actions leading up to the ultimate adjudication of applications, including the pace at which the applications are resolved. *See e.g. Safadi*, 466 F. Supp. at 700 ("Surely Congress, in passing § 1252(a)(2)(B)(ii), did not intend to preclude from judicial review all discretionary actions involved in the processing of an adjustment application except for the pace of such processing."); *Zhang*, 491 F. Supp. at 593 ("A holding that USCIS does not have discretion over the pace of application processing would lead to the illogical conclusion that USCIS must reach an unreviewable decision within a reviewable period of time."); *Singh v. Napolitano*, 710 F. Supp. 2d 123, 129 (D.D.C. 2010) ("[T]he government's decision to hold the plaintiff's application in abeyance falls within the purview of discretionary decisions or actions that fall outside this Court's jurisdiction.").

Courts that have reached the opposite conclusion, however, have considered that while the statute in question specifies that the ultimate decision regarding an application is within the discretion of the agency, the pace at which the agency does so is not discretionary, because the statute does not state that the agency may at its discretion

decline to adjudicate the petition at all, or take any length of time to do so. *See e.g. Kim,* 340 F. Supp. 2d at 393 ("[T]he [USCIS] simply does not possess unfettered discretion to relegate aliens to a state of 'limbo,' leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA."); *Tang v. Chertoff,* 493 F. Supp. 2d 148, 153–54 (D. Mass. 2007) ("The clear meaning of 8 U.S.C. § 1252(a)(2)(B)(ii) is that courts may not review decisions specified as discretionary by the INA. Despite the care taken in the INA to specify the *substance* of an adjustment of status decision as discretionary, the *pacing* of such a decision is not so specified."); *Geneme,* 935 F. Supp. 2d at 192 (§ 1252(a)(2)(B)(ii) "does not specify that USCIS shall have discretion to decide whether and when to adjudicate applications for adjustment of status, and so the court retains jurisdiction over [the plaintiff's] claim that it has unreasonably delayed the adjudication."); *Koren v. Chertoff,* No. 3:07CV157 PCD, 2007 WL 1431948, at *4 (D. Conn. May 14, 2007) ("Defendants are correct that the decision of whether to grant or deny an adjustment application is wholly discretionary, however, the decision of whether to actually adjudicate an adjustment application, as Plaintiffs are requesting in this case, is not discretionary."); *Boussana,* No. 14 CIV. 3757 LGS, 2015 WL 3651329, at *6 ("Because no statutory provision in the relevant subchapters [of the INA] expressly gives the government the power not to adjudicate an adjustment of status application, Defendants' decision to place Plaintiff's application on adjudicatory hold is not insulated from judicial review.") (internal quotation omitted).

In light of relevant Fourth Circuit and Supreme Court precedent, as well as the statutory framework of the INA, the undersigned is persuaded that the reasoning employed by those district courts that have found jurisdiction over claims such as these is more convincing than that employed by those declining to find jurisdiction. As courts

finding jurisdiction have persuasively pointed out, if the INA imposes an absolute bar to the review of the pace at which applications are decided, the USCIS would be free to simply withhold judgment indefinitely and decline to resolve the applications at all. Recognizing this possibility, a number of the courts declining to find jurisdiction have indicated that in a case where the delay has become so excessive that the USCIS has effectively abandoned the application, jurisdiction may exist. *See e.g. Safadi*, 466 F. Supp. at 700 ("Importantly, not addressed here is the question whether jurisdiction would exist in a district court to review plaintiff's case where USCIS refused altogether to process an adjustment application or where the delay was so unreasonable as to be tantamount to a refusal to process the application."); *Fayyazi*, No. CIV. WDQ-11-3066, 2012 WL 5267090, at *3 n.23 ("There is authority that an agency's 'inordinate' delay in reviewing an I–485 application can, at some point, become a nondiscretionary 'failure to adjudicate.'"); *Labaneya v. U.S. Citizenship & Immigration Servs*., 965 F. Supp. 2d 823, 831 (E.D. Mich. 2013) (collecting cases). However, this concession undermines the central holding in those cases, that the INA imposes an absolute judicial bar to federal review of agency delay in deciding status adjustment applications. If jurisdiction exists to determine when ordinary delay has crossed the line into "inordinate delay" or a "failure to adjudicate," then jurisdiction over the pace of adjudication does in fact exist, and the INA does not operate to prevent judicial review entirely.

While § 1159(b) specifies that it is within the discretion of the Attorney General and the Secretary of DHS to approve or deny an asylee's request for a status adjustment, it does not provide that the agencies have the discretion to decline to consider the application at all. *See* 8 U.S.C. § 1159(b). The discretion over *how* to resolve an application does not necessarily extend to include the discretion over *whether* to resolve an

application. *see e.g. Hosseini v. Napolitano*, 12 F. Supp. 3d 1027, 1032 (E.D. Ky. 2014) ("'[N]othing in the INA addresses, much less specifies, any discretion associated with the pace of adjudication.'") (quoting *Al-Rifahe v. Mayorkas*, 776 F. Supp. 2d 927, 932 (D. Minn. 2011)); *Mugomoke v. Curda*, No. 2:10-CV-02166 KJM, 2012 WL 113800, at *4 (E.D. Cal. Jan. 13, 2012) ("While the Secretary has discretion to decide the outcome of an I–485 application, the authority to not act on an application is not conferred by any statute.").

The Supreme Court decision in *Kucana* supports the determination that the INA does not bar judicial review in cases like the instant action. *Kucana* made clear that in order to be barred by the jurisdiction-stripping provision contained in § 1252(a)(2)(B)(ii), the decision or action in question must be specifically identified as being discretionary by statute. *See Kucana,* 558 U.S. 233 at 246-47. Additionally, the *Kucana* Court emphasized that the type of decisions shielded from judicial review by the INA's jurisdiction-stripping provisions are "substantive decisions" involving the merits of an immigration applicant's petition. *Id.* at 247-48. "[A]djunct rulings," which merely serve "to ensure that aliens [a]re getting a fair chance to have their claims heard," are not barred from review. *Id.* Finally, the *Kucana* Court made clear that "the presumption favoring judicial review of administrative action," means that where the question of jurisdiction is "reasonably susceptible to divergent interpretation," a court should find in favor of judicial review. *Id.* at 251. Plaintiffs here are not challenging a "substantive decision," of the type identified by the Supreme Court as being barred from review by the INA, and instead merely seek to ensure that their applications are adjudicated. Moreover, the fact that so many courts considering the jurisdictional question raised by this case have reached differing conclusions makes clear that the issue is "reasonably susceptible to divergent

interpretation," therefore suggesting the presumption of judicial review should prevail. *Id.*

This determination is also in line with Fourth Circuit precedent interpreting the availability of review under the APA. The Fourth Circuit has previously held that, even in cases where agency action is committed to its discretion by law, federal courts may still "review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations." *Elecs. of N. Carolina, Inc.*, 774 F.2d at 1267; *see also Hosseini v. Johnson*, 826 F.3d 354, 358 (6th Cir. 2016) ("Courts may review non-discretionary decisions that underlie determinations that are ultimately discretionary.") (quotation omitted). The Fourth Circuit has subsequently made clear that the admonition this exception should not apply "where the challenge is only to the decision itself," should be strictly followed. *See Angelex*, 723 F.3d 500 (4th Cir. 2013) (quoting *Elecs. of N. Carolina, Inc.*, 774 F.2d at 1267). Here, Plaintiffs are arguing that Defendants failed to fulfill their statutory obligations by unreasonably delaying the consideration of Plaintiffs' applications. Plaintiffs are certainly not in this case seeking to mischaracterize a claim which in reality challenges a discretionary decision, as they are instead seeking to compel Defendants to *reach* a substantive decision regarding their applications.

Finally, the statutory framework of the INA supports the determination that jurisdiction exists. Section 1159(b) does not specify that the agencies have discretion to review or decline to review applications at their leisure, in fact, there are numerous statutory and regulatory provisions which operate to impose a non-discretionary duty on the agencies to process applications. First, 8 U.S.C. § 1103 states that "[t]he Secretary of Homeland Security *shall* be charged with the administration and enforcement of this chapter and all other laws relating to the immigration and naturalization of aliens..." 8

U.S.C. § 1103(a)(1) (emphasis added). The Code of Federal Regulations Further provides that, with respect to applications for adjustment of status, "the applicant *shall* be notified of the decision of the director, and, if the application is denied, the reasons for the denial." 8 C.F.R. § 245.2(a)(5)(i) (emphasis added). The use of the word "shall" in the relevant statutes and regulations shows that Defendants have a mandatory duty to act on the application, even if the ultimate determination of how they will resolve the application is committed to their discretion. *See Holland v. Pardee Coal Co.*, 269 F.3d 424, 431 (4th Cir.2001) (noting that "the word 'shall,' when used in a statutory context, is generally construed to be mandatory."). With the enactment of the INA, Congress constructed a sprawling statutory framework which creates various legal designations immigrants may obtain and specifies the manner in which they may obtain those legal statuses. Congress clearly intended that the agencies charged with enforcing and administering those laws would process applications in accordance with the statutory specifications, and did not grant the agencies unfettered discretion to ignore or apply the laws as they see fit. The undersigned thus **FINDS** that the Secretary of the DHS and the Attorney General have a non-discretionary duty to resolve applications filed under § 1159(b), and accordingly, jurisdiction over claims alleging that the agencies have unreasonably delayed performance of this duty are not barred.

### B.  *Remedy under the APA*

Having determined that jurisdiction is not barred by the INA, the undersigned will now consider whether the claim is cognizable under the APA. While it is true, as pointed out by several courts declining to find jurisdiction, that the INA does not provide statutorily mandated time frames within which the USCIS must resolve an application for adjustment of status, *see e.g. Fonov v. Gonzales*, No. C-3-07-207, 2007 WL 2815451, at

*4 (S.D. Ohio Sept. 25, 2007), the APA itself presents a "default" mandatory time frame, requiring that agencies conclude matters within a "reasonable" time. *See Mugomoke,* No. 2:10-CV-02166 KJM, 2012 WL 113800, at *4; *W. Virginia Highlands Conservancy v. Norton*, 161 F. Supp. 2d 676, 681 n.3 (S.D.W. Va. 2001) (finding that "[t]he APA provides a temporal reasonableness deadline in two separate provisions[,]" 5 U.S.C. § 555(b), and 5 U.S.C. § 706(1)). Because, as discussed above, the INA does not operate to preclude review under the APA, the APA's mandate that federal agencies conclude matters without "unreasonable delay" applies to the USCIS's determination regarding Plaintiffs' applications. This time frame is made enforceable by 5 U.S.C. § 706 which allows a federal court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

A remedy for unreasonable delay under the APA is available "only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All*., 542 U.S. 55, 64 (2004). As discussed in the context of jurisdiction under the INA, the USCIS has a non-discretionary duty to consider Plaintiffs' applications in accordance with the statutory considerations set out by § 1159(b). Thus, the undersigned **FINDS** that Plaintiffs' claim that their applications have been subjected to "unreasonable delay" is cognizable under the APA as they are asserting that the USCIS has failed to take a discrete action, that is adjudicate their applications, which it is required by law to take.

### C. Request for stay

Having concluded that there is jurisdiction over this claim under the APA, and the claim is otherwise cognizable, the undersigned will now consider Defendants' requested stay. Defendants ask that this case be stayed until December 27, 2019 in order to allow an

ongoing fraud investigation involving Plaintiff Xiu Jin Lin's asylum application to conclude. (ECF No. 7 at 1). Plaintiffs object to this request, arguing that their applications have been pending without decision for an unreasonable amount of time and further delay is unwarranted. (ECF No. 10 at 1-2).

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248 (1936). This incidental authority means that "[a] district court has broad power to issue stays to control its docket, and it can use that power to craft a solution to such problems." *Raplee v. United States*, 842 F.3d 328, 335 (4th Cir. 2016). The determination of whether a stay is warranted "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Id.* (quoting *Landis,* 248, 254–55 (1936)). "The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative." *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124, 127 (4th Cir. 1983). Accordingly, "this court has identified three factors to consider in determining whether to grant a motion to stay: '(1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party.'" *White v. Ally Fin. Inc.*, 969 F. Supp. 2d 451, 462 (S.D.W. Va. 2013) (quoting *Tolley v. Monsanto Co.*, 591 F.Supp.2d 837, 844 (S.D.W.Va.2008)).

While it is not mandated by the Constitution, courts will often stay a civil proceeding to allow an ongoing and related criminal investigation to proceed "'when the interests of justice seem [ ] to require such action.'" *See Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 530 (S.D.W. Va. 2005) (quoting *Sec. & Exch. Comm'n v. Dresser Indus.*,

*Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980)). Furthermore, courts should generally "remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Ventura*, 537 U.S. 12, 16 (2002). This judicial deference is "especially appropriate in the immigration context." *INS v. Aguirre-Aguirre*, 526 U.S. 415, 425 (1999).

Defendants assert that Plaintiff Xiu Jin Lin's asylum status is currently under review by ICE OPLA for potentially being the fruits of a fraudulent application. (ECF No. 7-1 at 4). The basis for this suspicion regarding the fraudulent nature of Plaintiff Xiu Jin Lin's underlying asylum application is that he was represented by an employee of the Feng Ling Liu law firm in the course of obtaining his asylum status in 2012. (*Id.*). Feng Ling Liu was convicted in 2014 for her involvement in a expansive immigration fraud conspiracy that took place between 2007 and 2012. (*Id.*). From 2007 to 2009, the conspiracy operated under the aegis of the Feng Ling Liu law firm. *See United States v. Feng Ling Liu*, No. 12-CR-934-01 RA, 2015 WL 4460898, at *1 (S.D.N.Y. July 20, 2015). In 2009, Feng Ling Liu became concerned that the high volume of applications filed by the Feng Ling Liu law firm would attract unwanted scrutiny. *Id.* at *3. In order to obscure the volume of applications filed, Feng Ling Liu changed the name of the firm to Moslemi & Associates and simultaneously opened a separate law firm known as Bandrich & Associates. Both law firms continued the business of creating and filing fraudulent asylum applications. *Id.*

Evidence from the conspiracy trial revealed that employees of the law firms created and assigned "fake persecution stories" to asylum applicants and "coached clients on how to discuss their fake persecution stories with immigration officials." *See United States v. Feng Li*, 630 F. App'x 29, 34-35 (2d Cir. 2015). The trial further revealed that

between 2007 and 2012, the conspiracy resulted in the approval of 1,610 asylum applications. *Id.* at 35. The sentencing judge determined that of these 1,610 asylum applications, only 10% were authentic. *Id.* Plaintiffs do not contest Defendants' assertion that Plaintiff Xiu Jin Lin was represented by either Feng Ling Liu or an employee of one of the implicated law firms during the course of his asylum application process. Instead, Plaintiffs merely reiterate their belief that the delay on their applications is unreasonable. (ECF No. 10 at 1-2).

Plaintiff Xiu Jin Lin's I-485 application has been pending for over six years, and the remaining Plaintiffs' applications have been pending for over four years. The length of this delay abuts the lower limit of what has frequently been found to be unreasonable by other courts considering this question. *See e.g. Siwen Zhang v. Cissna,* No. CV 18-9696-MWF (JCX), 2019 WL 3241187, at *5 (C.D. Cal. Apr. 25, 2019) ("[D]istrict courts have declined to find that delays exceeding six years were reasonable.") (collecting cases); *Labaneya*, 965 F. Supp. 2d at 833 (four years may be unreasonable); *Dehrizi*, No. CV-15-00008-PHX-ESW, 2016 WL 270212, at *5 (nine years unreasonable). However, unlike in those cases, where the defendants provided only generalized explanations, or no explanation for the delay at all, Defendants here have provided a specific and credible reason for the length of this delay. Defendants explain that consideration of Plaintiffs' applications for adjustment of status have been delayed due to the fact that Plaintiff Xiu Jin Lin's asylum application was submitted by a law firm later implicated in a large-scale criminal immigration fraud conspiracy. They have detailed the steps taken to review cases such as Plaintiff Xiu Lin's and have informed the Court that Plaintiff Xiu Lin's case is currently under review by ICE OPLA to determine if removal proceedings should be initiated. Defendants request that this case be stayed pending the determination by ICE

OPLA.

Two courts in this circuit have recently granted stays in somewhat analogous situations. In *Dilone v. Nielsen*, 358 F. Supp. 3d 490, 492 (D. Md. 2019), the District of Maryland weighed whether to grant a stay in a case involving a plaintiff's challenge to the delay in adjudication of his application for naturalization. The USCIS requested that the court dismiss the plaintiff's case because it had initiated removal proceedings against him. *Id.* at 494. The *Dilone* Court declined to dismiss the case, finding it retained jurisdiction despite the commencement of removal proceedings, but concluded that "allowing this case to proceed while removal proceedings remain ongoing would depart from a longstanding policy of giving such proceedings 'priority' over the naturalization process." *Id.* at 493 (citing *Zayed v. United States*, 368 F.3d 902, 905 (6th Cir. 2004)). Accordingly, the court concluded that the appropriate course of action was to stay the case in order "to allow the removal proceedings to run their course, while retaining authority to reopen the case in the event that those proceedings are not completed in a timely manner." *Id.*

Similarly, in *Murray v. Cissna*, No. 2:18-CV-2059-DCN, 2019 WL 2358951, at *1 (D.S.C. June 4, 2019), the District Court for the District of South Carolina considered whether to grant a plaintiff's motion to compel adjudication of his application for naturalization while the USCIS pursued a contemporaneous fraud investigation into the plaintiff's marriage. In *Murray,* the plaintiff had received official notice that removal proceedings were to be initiated, but the USCIS had not yet set a date for proceedings to commence. *Id.* The *Murray* Court determined that staying the case and allowing removal proceedings to conclude was the best course of action as allowing "two parallel tracks of … immigration proceedings" could produce contrary "factual and legal conclusions." *Id.* at *3.

While the situation presented here is slightly different than that in *Dilone* and *Murray,* in that the USCIS has not yet initiated removal proceedings and is instead in the process of reviewing whether to initiate removal proceedings, the reasoning employed in those cases is applicable. Defendants have identified facts which indicate there is a strong possibility Plaintiff Xiu Jin Lin received his asylee designation through a fraudulent application. The sentencing judge who oversaw the trial of the OFW conspiracy case found that, during the time period Plaintiff Xiu Lin applied for asylum, 90% of the asylum applications submitted by the law firm representing Xiu Jin Lin were fraudulent. *See Feng Li*, 630 F. App'x at 34-35. Given that Plaintiffs Wen Hui Lin, Xu Lin, and Hao Lin received asylum based upon Xiu Jin Lin's asylum status, the validity of their asylum status is similarly in doubt. Plaintiffs' status adjustment applications, which are the focus of this lawsuit, rest entirely on their asylum status. (ECF No. 7-1 at 4). Accordingly, removal of Plaintiffs' asylum status, and the commencement of removal proceedings, would negate their request for consideration of their I-485 applications.

The factors identified by this Court as being determinative when considering whether to grant a motion to stay weigh in favor of granting Defendants' request. Granting the motion to stay serves "the interests of judicial economy" because here, as in *Dilone* and *Murray*, pressing forward with judicial review over the application process while removal proceedings which may negate the basis for the application are pending would not be an effective use of judicial resources. *White v. Ally Fin. Inc.*, 969 F. Supp. at 462. The second factor, equity and hardship to the moving party if the stay is not granted, also points toward a stay being the appropriate choice. If this Court were to proceed to the merits of the case and potentially order Defendants to adjudicate Plaintiffs' status adjustment applications, they would be forced to do so before concluding an ongoing

investigation, which may result in the revocation of the basis for the applications. As indicated, Defendants have a credible reason to suspect that Plaintiffs' asylum status which undergirds their current status adjustment applications was obtained via fraudulent representation. Defendants are currently investigating this possibility, the results of which will determine whether Plaintiffs' applications will be sent back to the USCIS for final adjudication, or removal proceedings will be initiated against them. Under these circumstances, denying the stay would impose hardship on the moving party, because Defendants would be forced to either truncate their fraud investigation, or adjudicate Plaintiffs' status adjustment applications before determining if the basis for the applications was fraudulent.

The final factor, potential prejudice to the non-moving party, does not weigh in favor of the stay. Courts addressing this question when considering whether plaintiffs have been prejudiced under the analysis required by the APA, have generally concluded that plaintiffs are prejudiced by untoward delay in adjudication of their status adjustment applications. *See Asmai v. Johnson,* 182 F. Supp. 3d 1086, 1096 (E.D. Cal. 2016); *Hosseini*, 12 F. Supp. 3d at 1035; *Geneme*, 935 F. Supp. 2d at 194. Plaintiffs here suffer prejudice from indefinite delay of their applications as uncertainty regarding whether or not they will be permitted to adjust their status makes it difficult to "adequately plan for [their] future." *Geneme*, 935 F. Supp. 2d at 194. Moreover, significant benefits regarding one's ability to work and travel flow from a successful adjustment of status application, and Plaintiffs are prejudiced if adjudication of their entitlement to those benefits is unreasonably delayed. *Id.* While courts have generally found that plaintiffs can successfully demonstrate they are prejudiced by excessive delay in consideration of their application, they have hesitated to declare such delay unreasonable where defendants

have pointed to a specific and credible reason for the delay, and granting a motion to expedite review would result in "truncated consideration" of an ongoing administrative process. *See Bemba v. Holder*, 930 F. Supp. 2d 1022, 1033 (E.D. Mo. 2013).

Plaintiffs have been waiting on a result for their request to adjust status for over four to six years. They object to Defendants requested stay on the grounds that consideration of their applications has been delayed long enough. (ECF No. 10 at 1). While Plaintiffs have an interest in having their applications adjudicated without inordinate delay, given the unique circumstances of their case, the undersigned **FINDS** that Defendants' request for a stay should be granted as the factors as a whole weigh in favor of their request. Plaintiffs' applications were among nearly 2,800 identified as being potentially fraudulent based on the conspiracy convictions in the OFW case. (ECF No. 7-1 at 2). Given the wide-spread fraud identified by those convictions, the USCIS took reasonable steps in erecting a special procedural process for cases implicated in the conspiracy case and subjecting those cases to special scrutiny. Ordering the USCIS to curtail its current review of Plaintiffs' case for potential fraud would not be appropriate under the circumstances. The undersigned therefore **FINDS** that Defendants request for a stay until December 27, 2019 should be granted.

While the undersigned concludes that Defendants have identified a sufficient basis for their requested stay, the fact that the circumstances of Plaintiff Xiu Jin Lin's initial asylum application raise a reasonable inference it may have been fraudulent does not justify delaying decision on Plaintiffs' applications indefinitely. Defendants accordingly should be required to update the Court on the status of Plaintiffs' case, if it has not been resolved by December 27, 2019, and provide status updates at a minimum every 60 days thereafter. Defendants are advised that this stay preserves "the option of reopening the

proceedings at any time, particularly if the agency fails to complete the proceedings in a timely fashion.*" Dilone*, 358 F. Supp. at 504.

### III.    **Proposal and Recommendations**

For the forgoing reasons, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** the following:

1.    Defendants' motion for a stay (ECF No. 7), be **GRANTED**;

2.    Defendants be **GRANTED** a **STAY** until **December 27, 2019** so that they may pursue the ongoing investigation regarding the potential filing of a MTR; however the stay be predicated on Defendants resolving the investigation in a timely manner.

3.    Defendants be ordered to provide the Court, on or before **December 27, 2019,** with a status report detailing the efforts taken to conclude the fraud investigation and continue to provide a status report, at a minimum, every **60 days** thereafter.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of

Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiffs and counsel of record.

**FILED:** October 7, 2019

Cheryl A. Eifert
United States Magistrate Judge